UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. RAYMOND F. WILLIAMS, | ) ) ) | CASE NO. 5:06cv1819 |
| Plaintiff, | ) ) | JUDGE JOHN R. ADAMS |
| vs. | ) ) | |
| POLY-PACIFIC INTERNATIONAL, INC., | ) ) | **MEMORANDUM OF OPINION AND ORDER** |
| Defendant. | ) ) ) | [Resolving Doc. 25] |

This matter is before the Court on Defendant's Motion to Dismiss (Doc. 25), filed July 28, 2008. Relator timely responded in opposition, and Defendant replied. The Court has been advised, having reviewed the Motion, response and reply, as well as any exhibits submitted properly by the parties and applicable law. For the reasons set forth herein, Defendant's Motion is GRANTED, and this matter is dismissed with prejudice.

**I.  Introduction**

Plaintiff filed this action pursuant to the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729, *et seq*., alleging that Defendant[1] had made false statements and claims for payment from the United States under contracts Defendant had entered into with the Department of Defense. In his Complaint, Relator alleges that Defendant has committed substantive violations of the FCA and has conspired to violate the FCA. After the United States declined to intervene against Defendant (Doc. 15), the Complaint was served upon Defendant, who moved to dismiss the Complaint on the basis of Relator's failure to state a claim under Fed. R. Civ. P. 12(b)(6), and failure to satisfy the pleading requirements for Fed. R. Civ. P. 9(b) fraud

---

[1] Plaintiff also brought claims against Canadian Commercial Corporation, against whom the United States intervened. (Doc. 15.) All claims against Canadian Commercial were dismissed upon stipulation of the parties on March 20, 2008. (Doc. 17).

claims, as well as a lack of personal jurisdiction and improper venue. Relator has not moved to amend his Complaint.

## II. Applicable legal standard

The Court will address the grounds set forth by Defendant for dismissal in the order in which Defendant presented them, beginning with failure to state a claim and failure to plead fraud with particularity under rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. As the Court of Appeals for the Sixth Circuit stated in *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545 (6th Cir. 2007):

> The Supreme Court has recently clarified the law with respect to what a plaintiff must plead in order to survive a Rule 12(b)(6) motion. *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, (2007). The Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964-65 (citations and quotation marks omitted). Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id*. (internal citation and quotation marks omitted). In so holding, the Court disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Twombly*, 127 S.Ct. at 1969.

*Id*. at 548.

If an allegation in the complaint is capable of more than one inference, the court must construe it in the plaintiff's favor. *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). The court may not grant a Rule 12(b)(6) motion merely because it may not believe a plaintiff's factual allegations. *Id*. Although this is a liberal standard of review, the plaintiff still must do more than merely assert bare legal conclusions. *Id*. To survive a Rule

12(b)(6) motion to dismiss, the plaintiff's complaint must allege either "direct or inferential" allegations regarding all of the material elements necessary to sustain recovery under "some" viable legal theory.  *Id*., citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

> Dismissal of a complaint for failure to comply with Rule 9(b) is reviewed as a dismissal for failure to state a claim.  Accordingly, such a dismissal is reviewed *de novo*. In the *qui tam* context, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face.

*United States ex rel. Snapp, Inc. v. Ford Motor Co.*, 532 F.3d 496, 502 (6th Cir. July 9, 2008) (internal citations omitted) (citing *United States ex rel Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 502 (6th Cir. 2007)).

Under Rule 9(b), a complaint alleges sufficient facts to survive a motion to dismiss when the plaintiff states "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "Where a complaint alleges 'a complex and far-reaching fraudulent scheme,' then that scheme must be pleaded with particularity and the complaint must also 'provide examples of specific' fraudulent conduct that are 'representative samples' of the scheme."  *United States ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 444-45 (6th Cir. May 13, 2008) (quoting *Bledsoe*, 501 F.3d at 510).     In reviewing its case law, the Sixth Circuit has noted that it has

> interpreted Rule 9(b) to require that a plaintiff "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)). As a sister circuit has phrased it, "at a minimum, Rule 9(b) requires that the plaintiff specify the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (citation omitted).

*Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006).

In the context of a *qui tam* action, the FCA requires that specific elements be shown.

> In relevant part, the False Claims Act imposes liability on a person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a)(2). As this statutory language suggests, a claim under these portions of the False Claims Act has several elements. First, the defendant must have made a false statement or created a false record, and must have done so with actual knowledge, deliberate ignorance, or reckless disregard of the truth or falsity of the information. Second, the defendant must have submitted a claim for payment to the federal government. Third, the defendant's false statement must have been made with the purpose of getting a false or fraudulent claim paid or approved by the Government. Finally, the defendant's false statement or record must have been material to the government's decision to make the payment sought in the defendant's claim.

*Snapp*, 532 F.3d at 504-05 (internal citations and quotations omitted); *see also United States ex rel. Augustine v. Century Health Servs.*, 289 F.3d 409, 413 (6th Cir. 2002); *Marlar*, 525 F.3d at 446; *Allison Engine Co., Inc. v. United States ex rel. Sanders*, 128 S. Ct. 2123, 2128 (June 9, 2008); *United States ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Group, Inc.*, 400 F.3d 428, 443 (6th Cir. 2005). "The elements of an FCA action must be pleaded with the particularity required by Rule 9(b)." *Marlar*, 525 F.3d at 445 (citing *Yuhasz*, 341 F.3d at 563).

### III. Factual Background

In reviewing Defendant's Motion to Dismiss under Rule 12(b)(6), the Court takes the factual allegations plead by Relator as true. Relator alleges that Defendant, with whom Relator is a competitor and who received the contracts at issue to the exclusion of Relator, contracted with the United States Government to lease and recycle plastic blasting media ("PBM"). According to Relator, PBM are "plastic and polymer particles that are applied under pressure, or 'blasted,' against painted metal surfaces to remove paint without damaging the metal surface." (Compl. at 6.)[2] This process results in a dust-like waste product that contains heavy metals at such levels that they are considered hazardous materials under the Resource Conservation and

---

[2] All references to the Complaint are to the paragraph numbers therein.

4

Recovery Act, 42 U.S.C. § 6901, *et seq.* A generator of such waste will be subject to hazardous waste regulations unless, among other things, it recycles the waste products by "us[ing] or reus[ing] [them] as ingredients in an industrial process to make a product, provided the materials are not being reclaimed." 40 C.F.R. § 261.2(e)(1)(i). Relator explains some of the details of this exemption as well as circumstances that do not trigger the exemption. (Compl. at 9.) In addition, Relator outlines what a recycling contractor must certify to the Department of Defense in order to qualify to receive payment for recycling services. (Compl. at 10.)

In his first count, Relator alleges that Defendant committed substantive violations of the FCA by failing to recycle the PBM that it had contracted to recycle, but representing to the United States Government that it had recycled the materials. Relator states that,

> [s]ince at least 2000 . . . Defendant knowingly entered into and/or was a party to specifically but not limited to PBM Contracts with Department of the Navy at Cherry Point Navy Aviation Depot, Marine Corp Air Station Beaufort, SC, Navair Solomons Island and the Department of the Air Force at WR/ALC that required it to perform recycling services that Defendant knew would not be performed in accordance with the PBM Contracts.

(Compl. at 12.) Such contracts were allegedly false because Defendant knew it did not have the capacity to recycle the quantity of materials for which it had contracted.

Further, according to Relator, Defendant "submitted invoices for payment for recycling services which it did not perform, and which it knew that it would not perform, in accordance with the PBM Contracts." (Compl. at 13.) In addition, the invoices submitted to the United States Government by Defendant included "express and/or implied certification[s]" that the recycling would take place as required by the contracts, and Defendant knew that such certifications were false because it did not have the capacity to perform the recycling required. *Id.* Relator alleges that, by submitting such invoices to the United States Government, Defendant knowingly made false statements in order to receive payment under the contracts, and

5

falsified records to support those statements. He further alleges that Defendant knowingly failed to disclose information that would have required Defendant to make substantial repayments to the United States Government. Such actions, Relator alleges, caused the United States Government to be damaged "in the amount of millions of dollars in funds paid for PBM and/or recycling services that were not rendered," and also caused damage in the form of the improper disposal of hazardous materials. (Compl. at 17.)

In his second count, Relator alleges that Defendant engaged in a conspiracy with unknown co-conspirators to defraud the United States Government, as set forth above in his first claim. Relator claims that Defendant and the unknown co-conspirators have

> taken substantial steps in furtherance of those conspiracies, *inter alia*, by entering into PBM Contracts falsely stating that Defendant had the capacity to recycle the Dust Product required to be recycled under those contracts; preparing false invoices and supporting documents . . . ; creating false entries in accounting books and records relating to inventory and consumption of Dust Product, transporting and storing Dust Product at other facilities; and transporting Dust Product to China.

(Compl. at 20.) Relator alleges that millions of dollars in damage has been done to the United States Government as a result of this conspiracy, as well as damage done by the improper recycling of hazardous wastes. (Compl. at 17.)

Relator seeks relief in the form of an injunction preventing Defendant from continuing to violate the FCA, as well as treble damages and civil penalties for those violations. He also seeks the maximum award allowed a *qui tam* plaintiff under 31 U.S.C. § 3729, as well as costs and attorney's fees.

**IV. Analysis**

The Sixth Circuit has cited to numerous cases outside the Circuit in which courts have dismissed claims that lacked particulars about the contracts at issue. In one such case from the United States District Court in Massachusetts, the relator pursued fraud claims against various

6

hospitals and medical vendors that had allegedly submitted improper costs to Medicare. *United States ex rel. Walsh v. Eastman Kodak Co.*, 98 F. Supp. 2d 141, 147 (D. Mass. 2000). In his complaint, the relator "merely describe[d] the contracts between the vendor defendants and defendant hospitals, but [did] not identify with particularity any sales or claims for payment that were allegedly fraudulent." *Id.* The relator gave no indication of how he had learned of the defendants' alleged fraudulent conduct, nor could he identify a single claim sent by the defendant to the Government. *Id.*; *cf. Marlar*, 525 F.3d at 446. The court concluded that the relator's complaint had, "in essence, set[] out a methodology by which the [defendants] might have produced false invoices, which in turn could have led to false claims. Without citing a single false claim arising from an allegedly false invoice, [the relator] ha[d] not met even a bare-bones Rule 9(b) test." *Id.*

It was on a similar basis that the Sixth Circuit decided *Yuhasz*, in which a relator alleged fraudulent conduct on the part of Brush Wellman, Inc. The relator claimed that the defendant had submitted fraudulent invoices for payment from the Government for contract work it had purportedly performed, but that allegedly was not in compliance with the certifications of quality the defendant had made to the Government. *Yuhasz*, 341 F.3d at 561-62. Though the relator gave vague suggestions of the ways in which the work was noncompliant, he gave no specifics to support those claims. *Id.* at 563. The court also noted that he did not provide identifying information about the contracts at issue, nor did he provide a single invoice submitted to the Government by the defendant, which relators in other cases had provided. *Id.* at 564-65 (citing *United States ex rel. Roby v. Boeing Co.*, 184 F.R.D. 107 (S.D. Ohio 1998); *United States v. Pogue*, 977 F. Supp. 1329 (M.D. Tenn. 1997)). The court concluded that "the complaint

7

contained[ed] no particularized allegations of wrongdoing," and that "[t]he failure to identify specific parties, contracts or fraudulent acts require[d] dismissal." *Id.* at 564.

This Court finds that Relator's Complaint lacks the very elements required repeatedly by the Sixth Circuit to bring a claim under the FCA and to survive the Rule 9(b) particularity requirement. Relator has alleged no specific acts committed by Defendant, and has given no specific time line, no names of persons involved, no dates on which the invoices were submitted, and no specific monetary figures for those invoices. In fact, Relator has composed a complaint entirely devoid of any specifics. In his first count, Relator alleges that Defendant agreed to recycle a quantity of PBM dust that it knew it could not recycle in accordance with the terms of the recycling contracts. Although Relator names several Government agencies with which Defendant allegedly contracted, no specifics about those contracts are given, such was when they were formed or what they contained. When he further contends that Defendant submitted invoices for payment for services it did not perform, no indication of invoice amounts, invoice numbers, invoice dates or amounts of recycled product are asserted by Defendant. He cannot even provide evidence that those invoices were actually submitted, or that they were paid by the Government. These are the most vague of assertions and cannot withstand the Rule 9(b) requirements. Relator asserts in his Response to Defendant's Motion to Dismiss that the Complaint "specifies time specific contracts and the acts of fraud and deceit." (Response at 6.) The assertion is conclusory, and mere assertion does not make it so. Relator's first count is therefore dismissed for failure to allege an FCA with sufficient particularity as required by Rule 9(b).

Similarly, Relator's second count must be dismissed. While he alleges that a conspiracy existed between Defendant and "others," he does not provide any indication of who the "others"

were.  Moreover, as set forth above, his underlying FCA claim cannot succeed because he has not plead fraud with any particularity.  "The tort of civil conspiracy is a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages."  *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio, 1998) (internal quotations omitted).  "An underlying unlawful act is required before a civil conspiracy claim can succeed."  *Id.* (citing *Gosden v. Louis*, 687 N.E.2d 481, 496 (Ohio Ct. App. 1996); *Minarik v. Nagy*, 193 N.E.2d 280, 281 (Ohio Ct. App. 1963)).  For this reason, Relator's second count is dismissed for failure to state a claim upon which relief may be granted.

At the end of its Motion to Dismiss, Defendant alleges that this Court lacks personal jurisdiction over Relator's claims.  This is an argument Defendant reserved until after it had addressed the Complaint's compliance with Rules 9(b) and 12(b)(6).  The Court addressed Defendant's arguments in the order in which they were presented, and has found that the Complaint must be dismissed under Rules 9(b) and 12(b)(6).  For this reason, the Court declines to address the jurisdictional arguments raised by Defendant.

The final issue the Court must address is Relator's claim that Defendant is out of time to file its Motion to Dismiss.  According to Relator's rendition of events, Defendant was served with a copy of the Complaint on May 22, 2008, and should only have had twenty days to file a Motion to Dismiss under the Federal Rules of Civil Procedure, absent leave of Court.  However, Defendant filed its Motion to Dismiss on July 28, 2008, without leave.  Defendant has submitted an affidavit with its Reply (Doc. 29-2) from Jack F. Fitzmaurice, an attorney in the State of California.  He informs the Court that he is counsel for Defendant, and that counsel for Relator had improperly served the Complaint upon the registered agent of Poly-Pacific Technologies, a defunct California corporation.  Mr. Fitzmaurice brought the error to Relator's counsel's

attention and offered to receive permission from Defendant to receive service. It was not until near the end of June that Mr. Fitzmaurice had secured permission to receive service, and he informed Relator's counsel by telephone of that permission.

While this history is instructive as to Relator's arguments that Defendant is out of time to file a Motion to Dismiss, what is dispositive of the issue is the fact that Relator has never filed a Motion to Strike or raised any other formal objection to the filing of the Motion to Dismiss. Instead, he has simply raised the issue in his Response to the Motion to Dismiss, hoping that it would carry the day. It does not. Relator has waived any argument about the timeliness of Defendant's Motion to Dismiss.

## V. Conclusion

Relator has failed to satisfy the pleading requirements of Fed. R. Civ. P. 9(b) in pleading the first count of his Complaint because he has not plead fraud with particularity. Further, as he has failed to satisfy Rule 9(b) with respect to his fraud claim, his conspiracy claim—which is based upon his fraud claim—must also fail. Because the Court is dismissing the Complaint on the basis of Relator's failure to state a claim upon which relief may be granted, it declines to address Defendant's personal jurisdiction argument. For the reasons set forth herein, Defendant's Motion to Dismiss is GRANTED, and the Complaint is DISMISSED in its entirety, with prejudice.

IT IS SO ORDERED.

DATE: October 6, 2008          */s/ John R. Adams*
                                Judge John R. Adams
                                UNITED STATES DISTRICT COURT